❏ Original ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Information associated with cellular telephone number 414-317-5450, as more fully described in Attachment A. | ) Case No. 22-922M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before   7/6/22   *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Honorable Nancy Joseph   .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of   11/12/2022   .

Date and time issued:   6/26/22 @ 2:33 p.m.

*Judge's signature*

City and state:   Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with:

   - the cellular device assigned call number **(414) 317-5450** (referred to herein and in Attachment B as **"Target Cell Phone 1"** or "**TCP-1**"), that is in the custody or control of Sprint/T-Mobile (referred to herein and in Attachment B as the "Service Provider" or "Provider"), a wireless communications service provider that is headquartered at 6360 Sprint ParkwayOverland Park, KS 66251.

2. Target Cell Phone 1.

# ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with **TCP-1** for the time period from May 16, 2022, to present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by **TCP-1**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from **TCP-1** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which **TCP-1** or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with **TCP-1**.

c. Information about the location of **TCP-1** for a period of **30 days**, during all times of day and night. "Information about the location of TCP-1" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of **TCP-1** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

3

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Jaquan MARTIN (DOB 07/24/1995) and other unidentified subject(s) since January 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this warrant.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Information associated with<br>cellular telephone number 414-317-5450,<br>as more fully described in Attachment A. | )<br>)<br>)<br>)<br>)<br>)  Case No. 22-922M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❏ contraband, fruits of crime, or other items illegally possessed;
- ❏ property designed for use, intended for use, or used in committing a crime;
- ❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841(a)(1), 843(b), and 846 | Possessing controlled substances with intent to distribute; attempting or conspiring to violate federal drug laws; using a communication facility to violate federal drug laws |

The application is based on these facts:

See Attached Affidavit

- ❏ Continued on the attached sheet.
- ☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* 11/12/2022 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MICHAEL MIGAZZI  Digitally signed by MICHAEL
(Affiliate)  MIGAZZI (Affiliate)
Date: 2022.06.21 11:36:18 -05'00'

*Applicant's signature*

Michael Migazzi, DEA TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: 6/22/22

*Judge's signature*

City and state:  Milwaukee, WI                    Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Michael Migazzi, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(414) 317-5450** ("**Target Cell Phone 1**" or "**TCP-1**") with International Mobile Subscriber Identifier (IMEI) number 310240244294884. **TCP-1** service provider is Sprint/T-Mobile a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251, New Jersey. **TCP-1** is has no subscriber name and an address of 123 W Capitol Dr, Milwaukee, WI 53212. **TCP-1** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      On May 16, 2022, the Honorable Nancy Joseph, United States Magistrate Judge for the Eastern District of Wisconsin, authorized a federal search warrant for information about the location of **TCP-1** in Case No. 22-889M (NJ). That monitoring period expired on or about June 15, 2022.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application(s) by the United States of America for an order(s) pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from **TCP-1**.

4.     I am currently a Task Force Officer with the Drug Enforcement Administration (DEA), and have been since June 2020. I am employed full time as a police officer with the New Berlin Police Department for the past 15 years and spent the last two years as a Task Force Officer with the DEA.

5.     I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, United States currency, and other evidence of criminal activity. As a narcotics investigator, I have interviewed individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in many aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of drug traffickers. I have been the affiant on search warrants. Furthermore, I have attended training courses, which specialized in the investigation of drug trafficking. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

6.     Based upon my training and experience and information relayed to me during the course of my official duties, I know that illegal narcotic sales in the United States generate billions of dollars annually, most of it in United States currency. Efforts to legitimize or "launder" this

2

cash by drug traffickers are subject to detection because of intense scrutiny placed on large financial transactions by U.S. banks. To avoid detection, traffickers have developed a number of money laundering systems to avoid financial transaction reporting requirements.

7.     In addition, I have also learned narcotic traffickers routinely utilize narcotics proceeds to purchase assets, including real property or investments in legitimate business ventures. By doing so, narcotics proceeds are introduced into the financial system. The narcotics traffickers then utilize these assets to facilitate legitimate businesses designed to effectively launder drug proceeds. Once the assets are no longer needed, they are sold, potentially for a profit. Based on my training, experience, and conversations with other law enforcement officers, traffickers are also known to take narcotics proceeds and smuggle them back to the source of supply for the drugs through bulk currency transfers via vehicles or money orders.

8.     Based on my training, experience, and conversations with other law enforcement officers, I know that distributors of marijuana, methamphetamine, cocaine, heroin, as well as other controlled substances, often use cellular telephones. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on a frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identities. I know that these individuals often use code words to discuss controlled substances and methods of concealing controlled substances while talking on the telephone. I know that drug traffickers often conduct extensive countersurveillance to avoid law enforcement detection.

9.     Based upon training and experience, I know that drug trafficking and money-laundering organizations routinely use operational techniques to sustain their illegal enterprises. These practices are designed and implemented to achieve two paramount goals: (1) the successful facilitation of the organization's illegal activities, including the importation and distribution of

3

controlled substances, and the subsequent repatriation of the proceeds of that illegal activity; and (2) the minimization of the exposure of coconspirators, particularly those operating in leadership roles, from investigation and prosecution by law enforcement. More specifically, based on my training and experience, I know the following:

- Sophisticated drug-trafficking organizations routinely compartmentalize their illegal operations. The compartmentalization of operations reduces the amount of knowledge possessed by each member of the organization. This method of operation effectively minimizes the potential damage an individual cooperating with law enforcement could inflict on the organization and further reduces the adverse impact of a particular law enforcement action against the organization.

- Members of these organizations routinely use communications facilities, such as cellular telephones, to communicate directions and information about the organization's illegal activities to other organization members.

- During the course of these telephonic communications, organization members routinely use coded references and encryption in an effort to elude law enforcement detection.

- The communication of time sensitive information is critical to the successful conduct of these organizations' illegal activities. The critical nature of this information stems from the necessity of the organization's leadership to provide direction for the importation and distribution of narcotics, and the subsequent laundering of the proceeds of those illegal activities.

- Drug traffickers and the money launderers associated with them often confine their illegal telephonic communications to long-trusted organizational members and other high-level narcotics traffickers in an attempt to evade law enforcement and circumvent narcotics investigations; and

- Drug traffickers routinely use fictitious names or other individuals to register pagers, telephones, vehicles, real property, and utility services to avoid detection by law enforcement.

10.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law

4

enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

11. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) have been committed, are being committed, or will be committed by Jaquan MARTIN (DOB: 07/24/1995) and other associates of his drug trafficking organization who have yet to be identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

12. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

11. In late February 2022, case agents debriefed a confidential source (CS-1)[1], who provided information about a large-scale heroin and meth distributor identified as Jaquan

---

[1] For several reasons, case agents believe CS-1's information is reliable and credible. Substantial parts of CS-1's information have been independently corroborated and verified by law enforcement. CS-1 has made direct observations, which were further corroborated and verified by law enforcement. CS-1's information has been consistent with information obtained from utility records, telephone toll records, vehicle registration records, social media records, public databases, and surveillance. CS-1 has prior convictions for possession of controlled substances, possession of a firearm by a felon, manufacture or deliver

5

MARTIN. CS-1 stated MARTIN distributes kilogram quantities of heroin and methamphetamine in the greater Milwaukee area. CS-1 stated he/she has known MARTIN to be distributing narcotics for several years. CS-1 stated MARTIN typically deals half pound to pounds of meth and ounce level and above of heroin.

12. CS-1 further stated MARTIN typically will drive around in a silver BMW and deal narcotics on the street in the north and east side of Milwaukee. CS-1 knows MARTIN as "Jay" and contacts "Jay" at cellular telephone number (414) 975-1460. Case agents quiried this phone number in law enforcement databases which came back to MARTIN. This number was also provided to Probation and Parole by MARTIN. CS-1 identified MARTIN in a Wisconsin Department of Transportation photograph that was shown to CS-1 by case agents. CS-1 advised case agents (414) 975-1460 is a new cellular number for MARTIN. CS-1 stated that a prior cellular number for MARTIN was (414) 698-3795. On May 6, 2022, CS-1 contacted case agents to advise MARTIN switched his cellular number again to **(414) 317-5450 (TCP-1)**.

13. Case agents obtained cellular records of (414) 975-1460 from T-Mobile. The subscriber information listed to "A A MARTIN" at 2425 W Capitol Dr, Milwaukee, WI, 53206. The International Mobile Subscriber Identity given was 310240247125858.

14. A review of cellular records of (414) 975-1460 from 03/09/2022 thru 04/10/2022 showed 132 contacts with (213) 669-0155, which is a California based phone number with no subscriber information. During the above period (414) 975-1460 had 31 contacts with (210) 781-

controlled substances, and parole violations. CS-1 is cooperating for prosecutorial consideration for an arrest on drug charges.

6

3525, and through law enforcement databases, described further below, I know that the subscriber to this number is Clifford JONES.

15.     Utilizing law enforcement databases, case agents found telephone number (210) 781-3525 to be a target telephone in a Detroit, Michagan DEA case I7-20-0162.  Case agents in Detroit, Michigan advised (210) 781-3525 belongs to Clifford JONES. Clifford JONES is identified as a main target who is a kilogram-level cocaine, heroin, and meth dealer. DEA-Michigan case agents stated JONES is obtaining narcotics primarily via mail from California.

16.     In early April 2022, CS-1 told case agents he could purchase "anything" from MARTIN.  CS-1 stated a pound of meth is a "normal" deal for MARTIN.  CS-1 stated MARTIN will sell him heroin, cocaine, meth, and marijuana.

17.     On April, 14, 2022, CS-1 conducted a cotrolled buy from MARTIN under the supervision of case agents.  On this date CS-1 made a recorded phone call to (414) 975-1460**.**  CS-1 spoke with MARTIN in the presence of agents and asked for two ounces of heroin.  MARTIN agreed to sell two ounces of heroin to CS-1.  While under the control of case agents CS-1 met with MARTIN and purchased two ounces of what MARTIN represented to be heroin, but later tested positive for fentanyl, for $2,000.  MARTIN arrived at the deal location in a gray Volkswagon bearing Illinois plate X652472.  The driver and sole occupant of the Volkswagon was positively identified as MARTIN by case agents, who were familiar with his appearance from his Wisconsin Department of Transportation photograph. After the deal was completed surveillance units followed MARTIN back to the area of 1606 N Humboldt Ave, Milwaukee, WI.  In the parking stall at 1606 N Humboldt Ave, was a silver BMW with tinted windows and no registration displayed (German Auto displayed where registration belongs), which is the same vehicle CS-1

7

has seen MARTIN drive in the past. Case agents tested the suspected fentanyl which tested positive for fentanyl.

18.     On April 15, 2022, case agents observed the same silver BMW parked in the stall by 1606 N Humboldt Ave, Milwaukee, WI. On April 20, 2022, case agents observed the same gray Volkwagaon from the controlled buy parked in front of 1606 N Humboldt Ave. On the same day case agents observed MARTIN walking from 1606 N Humboldt Ave with trash in his hands. MARTIN discarded the trash into the the trash bins in front of 1606 N Humboldt Ave and entered the gray Volkswagon, IL plate X652472, and drove away north on Humboldt Ave. Case agents were unable to follow MARTIN.

19.     On April 28, 2022, CS-1 conducted a second controlled buy from MARTIN under the control of case agents. On this date, while in the presence of case agents, CS-1 made a recorded call to MARTIN at (414) 975-1460. CS-1 ordered two ounces of fentanyl for $2,000. During the phone call MARTIN stated his prices went up from $40 a gram to $45 a gram because the fentanyl was hot and selling fast. MARTIN told CS-1 to meet him in the area of W. Brown Street at N. Holton Street. While case agents were coordinating the controlled buy surveillance they observed a silver BMW with "German Auto" displayed where the registration belongs park behind 1606 N Humboldt Avenue. Case agents observed MARTIN enter the rear entrance to 1606 N Humboldt Avenue using a key to enter. Case agents then observed MARTIN exit the residence and get into the same silver BMW. Case agents followed MARTIN in the silver BMW to the area of W. Brown Street at N. Holton Street where MARTIN met with CS-1 and sold CS-1 two ounces of fentanyl for $2000. Case agents tested the suspected fentanyl which tested positive for fentanyl.

20.     Case agents subpoenaed the new number (**TCP-1**) that CS-1 provided. Analysis of the subpoenaed records for **TCP-1** shows the account was activated on April 29, 2022, which is

consistant with CS-1's statement to case agents that MARTIN had recently obtained **TCP-1** as a new number. The records for **TCP-1** from April 29, 2022 through May 5, 2022 show common calls with numbers that MARTIN's previous phone, (414) 975-1460, had contacted. Case agents believe MARTIN frequently changes his cellular number to evade detection from law enforcement.

21.     On May 12, 2022, CS-1 conducted a third controlled buy from MARTIN under the control of case agents. CS-1 made arrangements with MARTIN to purchase a half pound of crystal meth for $2,0000. CS-1 contacted MARTIN by cellphone at **TCP-1.** Case agents set up surveillance prior to the controlled buy at MARTIN's residence, 1606 N Humboldt Avenue, Milwaukee, WI. Prior to the buy occurring case agents observed MARTIN arrive at the above address in the silver BMW with German Auto displayed where the registration belongs. MARTIN exited the BMW and entered the rear door to 1606 N Humboldt Avenue using a key. Case agents followed CS-1 to the buy location. Surveillance units observed MARTIN exit 1606 N Humboldt Avenue and enter the same BMW and followed MARTIN to W Lloyd Street at Holton Street. MARTIN pulled next to CS-1 in the BMW and handed CS-1 the crystal meth and CS-1 paid MARTIN with the $2,000 contolled buy money. Approximately four minutes later surveillance units observed MARTIN arrive back at 1606 N Humboldt Avenue in the same BMW. Case agents tested the suspected crystal meth CS-1 purchased form MARTIN which tested positive for crystal meth.

22.     On May 16, 2022, the Honorable Nancy Joesph, U.S. Magistrate Judge, Eastern District of Wisconsin, authorized a GPS Ping Location Information search warrant and Pen Trap & Trace on **TCP-1,** in Case No. 22-889M (NJ).

23.     During the monitoring period of **TCP-1** on May 20, 2022 the phone was in the area of Chicago O'Hare Airport and then Los Angeles International Airport. **TCP-1** was pinging in the Los Angeles, CA area from May 20, 2022 and returned back to Milwaukee, WI on May 23, 2022. **TCP-1** would then frequently ping in the area of MARTIN's residence, 1606 N Humboldt Avenue, when case agents would observe MARTIN at this residence. While **TCP-1** was in the Los Angeles, CA, area there were calls made to a California pre paid phone, 213-669-0155, and California-based number 424-335-5101.

24.     On May 25, 2022, case agents were monitoring the GPS pings on **TCP-1** which were showing in the area of MARTIN's residence. Case agents were conducting surveillance of MARTIN's residence when MARTIN was observed exiting 1606 N Humboldt Avenue and enter the silver BMW wearing purple latex type gloves carrying a brown paper bag in his right hand. MARTIN exited the parking lot in the BMW and drove very slow past a case agent's undercover vehicle. MARTIN then conducted a u-turn and again drove slowly past a case agent's undercover vehicle. MARTIN then conducted another u-turn and parked approximately one car length away in the middle of the road next to the undercover vehicle for approximately 2-3 minutes. Case agents believe MARTIN identified the undercover vehicle and was conducting counter-surveillance.

25.     On May 27, 2022, **TCP-1's** location was at General Mitchel International Airport, Milwaukee, WI and then Minneapolis International Airport. **TCP-1** was powered off while in the area of Minneapolis International Airport and not powered back on until June, 2, 2022, at which time the location was in the area of MARTIN's residence.

26.     Case agents believe that continuing to monitor **TCP-1's** location will assist in identifying potential suppliers, distributors, and locations associated with MARTIN.

10

## TECHNICAL BACKGROUND

27.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

28.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about **TCP-1**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

11

## E-911 Phase II / GPS Location Data

29.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of **TCP-1**, including by initiating a signal to determine the location of **TCP-1** on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

30.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique

12

identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communicationwithout revealing the communication's content. Currently, **TCP-1** has International Mobile Subscriber Identifier (IMEI) number 310240244294884 and Electronic Serial Number (ESN) 089235866509933378 .

## Subscriber Information

31.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **TCP-1**'s user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

32.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

33.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

13

34. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of **TCP-1** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

35. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until November 12, 2022. This investigation is expected to remain covert at least until then, so disclosing the warrant would alert targets or subjects about the existence of a federal investigation. This investigation targets a sophisticated drug trafficking organization with multiple targets, subjects, and witnesses. Case agents will continue to request the same notification deadline for all warrants in this investigation, so that the notifications can be coordinated or extended as necessary. A single notification date will reduce the administrative burden on case agents and the Court, minimize the risks of disclosure, and promote judicial economy. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **TCP-1** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any

14

tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

36.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **TCP-1** outside of daytime hours.

15

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1. Records and information associated with:

- the cellular device assigned call number **(414) 317-5450** (referred to herein and in Attachment B as **"Target Cell Phone 1"** or "**TCP-1**"), that is in the custody or control of Sprint/T-Mobile (referred to herein and in Attachment B as the "Service Provider" or "Provider"), a wireless communications service provider that is headquartered at 6360 Sprint ParkwayOverland Park, KS 66251.

2. Target Cell Phone 1.

## ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with **TCP-1** for the time period from May 16, 2022, to present:

i.   Names (including subscriber names, user names, and screen names);

ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.   Local and long distance telephone connection records;

iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.   Length of service (including start date) and types of service utilized;

vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by **TCP-1**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from **TCP-1** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which **TCP-1** or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with **TCP-1**.

c. Information about the location of **TCP-1** for a period of **30 days**, during all times of day and night. "Information about the location of TCP-1" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of **TCP-1** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

3

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Jaquan MARTIN (DOB 07/24/1995) and other unidentified subject(s) since January 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this warrant.

4